DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Ironia S. Gonzales, appeals the judgment of the Wood County Court of Common Pleas. After a jury trial, Gonzales was found guilty of trafficking in marijuana with a specification, a violation of R.C. 2925.03(A)(2) and (C)(3)(f), a felony of the second degree, and possession of marijuana, a violation of R.C. 2925.11(A) and (C)(3)(f), a felony of the second degree. The trial court sentenced Gonzales to eight *Page 2 
years incarceration for each count and ordered the terms to run concurrently, for a total term of eight years incarceration. It also imposed mandatory fines and suspended her driver's license for five years.
 {¶ 2} Before trial, Gonzales filed a motion to suppress both the marijuana obtained as a result of a search of her vehicle and statements she made to the arresting officer after the search. The trial court denied that motion, finding the search of her vehicle was supported by probable cause. The trial court also determined that Gonzales' statements were made subsequent to a validly executed waiver of her rights pursuant to Miranda v. Arizona.
 {¶ 3} Gonzales assigns the following errors for review:
 {¶ 4} "The court committed error in failing to grant the appellant's motion to suppress evidence and statements resulting from the unconstitutional search and seizure of appellant's vehicle and its contents.
 {¶ 5} "Absent illegally obtained evidence resulting from the unconstitutional search and seizure of appellant's vehicle and its contents and appellant's subsequent `fruits of the poisonous tree' statements obtained, appellant's conviction is against the manifest weight of the evidence and evidence was legally insufficient to support a conviction against her."
 {¶ 6} The following facts relevant to the challenged search and seizure were adduced at the suppression hearing. While on patrol northbound on highway Interstate 75, Sergeant Gazarek of the Perrysburg Township Police Department saw a Jeep *Page 3 
Cherokee with Kansas license plates without an illuminated rear license plate light. For the license plate illumination violation, he initiated a stop. Gonzales was driving and a female passenger was in the front passenger seat. He testified that as he approached the passenger side of the vehicle, he smelled a strong odor of raw marijuana emanating from the passenger compartment. Gazarek testified that the odor was strong enough to lead him to believe the car contained a large amount of marijuana. The trial court determined that Gazarek's training and experience qualified him to recognize the odor of raw marijuana.
 {¶ 7} Gazarek asked Gonzales for her driver's license; she produced a Texas driver's license. Gazarek asked Gonzales who owned the vehicle; Gonzales responded that it belonged to a friend and retrieved the paperwork from the glove compartment. Gazarek noted that Gonzales' hand was "visibly shaking" as she did.
 {¶ 8} Gazarek then asked Gonzales to step from the vehicle and together they walked to the rear of the Jeep. Gazarek "didn't beat around the bush" and first asked her, "How much marijuana is in the car?" Gonzales reportedly responded with a "1,000 yard stare" and said, "I don't know." Gonzales also told Gazarek, in response to a question, that they were going to Detroit. Gazarek asked her to sit in the rear of his patrol car and he informed her he was going to search her vehicle.
 {¶ 9} Just then, Officer Monica Gottfried, the backup Gazarek called, arrived; Gazarek told Gottfried he had smelled raw marijuana in the Jeep. Gazarek then walked up to the passenger, still in the Jeep, and asked her where they were heading. The *Page 4 
passenger told him they were going to Denver. Gazarek then asked the passenger to get out of the Jeep and he seated her in Gottfried's patrol car.
 {¶ 10} Gazarek and Gottfried then began their search of the Jeep. Looking through the Jeep's rear window, down into the cargo area, they saw a vinyl cover stretched from the back of the back seat to the Jeep's back hatch. The vinyl cover appeared factory-installed, and it was mounted and attached to the back seat and hooked to the back hatch and sides. Using his flashlight, Gazarek could see a gap of a few inches on each side of the vinyl cover, and could only see that "something was underneath."
 {¶ 11} The first thing Gazarek and Gottfried did was open the rear hatch of the Jeep. Through the open rear hatch, they opened the vinyl cover over the cargo area. They found duffel bags in the cargo area underneath the vinyl cover. They opened the duffel bags, and found approximately 150 pounds of marijuana packed in bricks.
 {¶ 12} Gazarek testified that, given the smell, he presumed there was a high amount of marijuana. He stated, however, "I have been on stops before where I smelled an overwhelming amount of marijuana and it is just a very fresh smaller bag, half a pound or whatever * * * I presumed that I was going to find a bunch too then, but I didn't."
 {¶ 13} Gonzales and her companion were arrested and taken to the Perrysburg Township police department. There, Agent Michael Ackley of the Wood County Sherriff's Office met with Gonzales and read her a statement of her rights pursuant to Miranda. Gonzales executed a written waiver of those rights. After her waiver, *Page 5 
Gonzales told Ackley that she was en route to Detroit to deliver the marijuana and that it was her fifth or sixth trip transporting large amounts of marijuana.
 {¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Fanning (1982), 1 Ohio St.3d 19. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. State v. McNamara (1997), 124 Ohio App.3d 706." State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.
 {¶ 15} Gonzales does not dispute that the initial stop of her vehicle based on a non-illuminated rear license plate was valid. State v.Held (2001), 146 Ohio App.3d 365. We therefore begin by examining the limits of the Fourth Amendment as applied to searches of vehicles. "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant."State v. Moore (2000), 90 Ohio St.3d 47, 49, citing Katz v. UnitedStates (1967), 389 U.S. 347, 357. Probable cause is defined as "a reasonable ground for belief of guilt." Id., quoting Carroll v. UnitedStates (1925), 267 U.S. 132, 161. "If probable cause exists, *Page 6 
then a search warrant must be obtained unless an exception to the warrant requirement applies." Id.
 {¶ 16} The automobile exception to the warrant requirement is "well-established." State v. Moore, 90 Ohio St.3d at 51, citingMaryland v. Dyson (1999), 527 U.S. 465, 466; United States v. Ross
(1982), 456 U.S. 798, 804; State v. Mills (1992), 62 Ohio St.3d 357,367. The "inherent mobility of the automobile created a danger that the contraband would be removed before a warrant could be issued." Id. at 52, citing South Dakota v. Opperman (1976), 428 U.S. 364, 367. Thus, once an officer has probable cause to believe that a vehicle may contain contraband, an officer may search the vehicle without a warrant.
 {¶ 17} In United States v. Ross, the United States Supreme Court clarified restrictions which the Fourth Amendment places on vehicle searches, holding that the permissible scope of a vehicle search is "no greater than a magistrate could have authorized by issuing a warrant based on the probable cause that justified the search." Id. at 818. Thus, compartments and packages within a vehicle which could contain the illicit object for which the police have probable cause to believe exist may also be searched. After an officer has probable cause to believe that a vehicle contains contraband, a permissible search of the vehicle is "defined by the object of the search and the places in which there is probable cause to believe it may be found." Id. at 824.
 {¶ 18} The "smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." State v. Moore, supra, at *Page 7 
syllabus. In Moore, after the officer stopped the defendant's vehicle for a traffic violation, the officer perceived a "strong odor of fresh burnt marijuana" in the vehicle and on the defendant's person. The officer searched both the defendant's person and the passenger compartment and discovered paraphernalia and a burnt marijuana cigarette in the ashtray.
 {¶ 19} Gonzales relies on State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255. In Farris, the court followed Moore and held that a "trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches." Id. at ¶ 51. Farris, specifically, held that the search authorized byMoore was not extended beyond the passenger compartment to the trunk of the car. Here, Gonzales argues that the cargo area of her Jeep constituted a "trunk" and that Gazarek had no probable cause to search her trunk.
 {¶ 20} This argument is unpersuasive. It ignores the fundamental proposition that the scope of a vehicle search is defined by the places in which an officer has probable cause to believe contraband exists — not by the particular type of container or compartment.
 {¶ 21} Farris depended on United States v. Nielsen (C.A.10, 1993),9 F.3d 1487, for the proposition that the "odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of a vehicle."Farris, 2006-Ohio-3255, ¶ 52. This proposition is established by the common sense observation that an odor of burning marijuana would not create an *Page 8 
inference that burning marijuana was located in a trunk. Nielsen
explicitly limited the scope of a search to the passenger compartment because that was the place from which the officer smelled burnt marijuana. Because a warrantless search of an automobile "is defined by the object of the search and the places in which there is probable cause to believe that it may be found," the smell of burnt marijuana does not provide probable cause to search a trunk. Nielsen, 9 F.3d at 1491, quoting United States v. Ross, 456 U.S. at 824.
 {¶ 22} In contrast, the odor of raw marijuana provides different probable cause than the odor of burnt marijuana. In fact,Nielsen, upon which Farris relied, examined cases where officers had probable cause to search a vehicle's trunk after the officer smelled raw marijuana. The odor of raw marijuana — especially an overwhelming odor of raw marijuana — creates probable cause to believe that a large quantity of raw marijuana will be found. An officer may rationally conclude that a large quantity of raw marijuana would be located in a vehicle's trunk. United States v. Ashby (C.A.10, 1988), 864 F.2d 690;United States v. Bowman (C.A.10, 1973), 487 F.2d 1229. FollowingNielsen, the Tenth Circuit again specifically held that the odor of raw marijuana created probable cause to search the trunk of a vehicle.United States v. Frain (C. A.10, 1994), 42 F.3d 1407 (table).
 {¶ 23} Contrary to Gonzales' argument, there is no "trunk exception" in Ohio. If, during a valid stop, an officer qualified to recognize the smell of raw marijuana detects an overwhelming odor of raw marijuana, the officer is justified in believing that the vehicle *Page 9 
contains a large amount of raw marijuana. If no large amount of raw marijuana is seen in the passenger compartment, the officer is justified in believing that a large amount of raw marijuana may be found in a container or compartment — including the trunk. Farris explicitly limited the "trunk exception" to cases where an officer smells burning marijuana — and no other indicators exist which would constitute probable cause to suspect the trunk contained contraband.
 {¶ 24} Therefore, the state's and Gonzales' argument over whether the cargo area of the Jeep constitutes a trunk is beside the point. We need not decide whether the Jeep's cargo compartment constitutes a "trunk" pursuant to a Farris analysis. Farris and the cases upon which it relies are based on the rule that probable cause to search an automobile is "defined by the object of the search and the places in which there is probable cause to believe it may be found." United States v. Ross,456 U.S. at 824. True, the cargo area of the Jeep was covered by a factory-installed tarp, which indicates a desire for privacy. However, given the description of the cargo area, the smell of a large amount of raw marijuana, concealed in the cargo area, may well have easily emanated into the passenger compartment.
 {¶ 25} Gazarek testified that he smelled an overwhelming odor of raw marijuana. He also smelled fabric softener, which, in his experience, narcotics traffickers use to mask the smell of large amounts of marijuana. He testified that marijuana is an "odiferous plant." The trial court found him qualified and experienced in identifying the odor of raw marijuana. We will not disturb this factual finding on appeal.State v. *Page 10 Fanning (1982), 1 Ohio St.3d 19. Under the totality of the circumstances, the strong smell of raw marijuana in the passenger compartment gave Gazarek probable cause to believe that the vehicle contained a large amount of marijuana and that it must have been concealed in the Jeep's cargo area. The seizure of the marijuana inside the duffel bags, located inside the Jeep's cargo area, was not improper.
 {¶ 26} On appeal, Gonzales does not argue the issue of whether her statements, made after she executed a waiver of her Miranda rights, should be suppressed. The trial court found that her waiver was knowingly and voluntarily executed. We find no error in this conclusion. Gonzales' first assignment of error is, therefore, not well-taken.
 {¶ 27} In her second assignment of error, Gonzales does not argue that her convictions were against the manifest weight of the evidence should we uphold the denial of her motion to suppress. Further, Gonzales has not filed a transcript of her trial. Pursuant to App. R. 9(B), the appellant has the burden to provide transcripts on appeal. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Because Gonzales has not filed a transcript of her trial, we must presume the proceedings were valid. Therefore, we may not reach her argument that her conviction is against the manifest weight of the evidence. Appellant's second assignment of error is not well-taken. *Page 11 
 {¶ 28} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., William J. Skow, P.J., CONCUR. *Page 1