[Cite as *State v. Vega*, 2017-Ohio-651.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
## No. 104058

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## EDWIN A. VEGA

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-599025-A

**BEFORE:** Blackmon, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** February 23, 2017

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor

Brett Hammond
Daniel T. Van
Eleina Thomas
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

John H. Lawson
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, OH 44103

Brandon J. Henderson
Justin M. Weatherly
Henderson, Mokhtari & Weatherly Co., L.P.A.
3238 Lorain Avenue
Cleveland, OH 44113

PATRICIA ANN BLACKMON, J.:

{¶1} The state of Ohio appeals from the trial court's granting defendant Edwin Vega's ("Vega") motion to suppress and assigns the following error for our review:

I. The trial court erred when it suppressed the evidence.

{¶2} Having reviewed the record and pertinent law, we affirm. The apposite facts follow.

{¶3} On March 28, 2015, Cleveland State University Police Officer Jeffrey Madej initiated a traffic stop at E. 18th Street and Payne Avenue in Cleveland, after allegedly witnessing Vega turn left at a red light. Officer Madej approached Vega's car, smelled a strong odor of raw marijuana coming from the vehicle, and advised Vega that he was going to search the car. Vega was put in the back of the police car. In the center console and cup holder area of Vega's vehicle, Officer Madej found three cell phones, several "raw buds of marijuana," a small amount of "shake weed," and an open pack of hard candy. Officer Madej also found cases of rolling papers, several aerosol canisters of an "odor masking agent," and "a white package box, USPS box, on the back seat." This box was partially opened and inside were "two white mail packages," which were sealed but unlabeled.

{¶4} Vega told Officer Madej that the envelopes contained stickers and refused to give consent to open the packages. Officer Madej continued to detain Vega, and approximately 23 minutes into the traffic stop, conferred with other officers and law enforcement officials, both on the scene and via phone calls, and tried to locate a narcotics K9 unit. After 38 additional minutes, the police were unsuccessful in locating

a K9 unit. Approximately 53 minutes into the traffic stop, Officer Madej wrote Vega tickets for a traffic infringement and misdemeanor possession of marijuana.

{¶5} In the meantime, the police made a "collaborative decision" to open the packages. This decision was "based * * * on the strong odor of marijuana coming from the vehicle." Inside the packages, Officer Madej found "three large Ziplock clear bags containing a large amount of Sweet Stone Candy." This is the same brand of candy that was found in the center console. It was not until the packages were opened that Officer Madej realized the candy "could contain THC." One hour and 12 minutes after Officer Madej stopped Vega's car, Vega was arrested for drug trafficking.

{¶6} On September 9, 2015, Vega was indicted with five drug-related offenses. On January 11, the court held a suppression hearing, and on January 25, 2016, the court granted Vega's motion to suppress, finding that Vega was unlawfully detained for an unreasonable amount of time after the initial search of his vehicle revealed a misdemeanor quantity of marijuana. The court suppressed the "150 individual packages of the Sweet Stone candy found in the envelopes that were opened during a constitutionally impermissible detention."

{¶7} It is from this order that the state of Ohio appeals.

### Standard of Review — Motion to Suppress

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual

questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

### Law and Analysis

{¶8} The Fourth Amendment to the United States Constitution provides protection against warrantless searches and seizures. There are exceptions, however, to the warrant requirement. *See generally State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949. "[T]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47, 53, 730 N.E.2d 804 (2000).

{¶9} However, the Ohio Supreme Court has held that "where police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, *that may logically conceal the object of the search*." (Emphasis added.) *State v. Welch*, 18 Ohio St.3d 88, 92, 480 N.E.2d 384 (1985). *See also State v. Young*, 146 Ohio App.3d 245, 257, 765 N.E.2d 938 (11th Dist.2001) ("[t]he right to be free of unreasonable

searches precludes the issuance of a search warrant for a litany of narcotics based upon the observation of a misdemeanor amount of marijuana").

{¶10} In the case at hand, the trial court found that Officer Madej's search of the envelopes in Vega's backseat was unreasonable. This finding is supported by Officer Madej's testimony that his probable cause to search was based "on the strong odor of marijuana coming from the vehicle * * * along with other indicators [such as] the odor-masking agent * * * [and] a lot of rolling papers." Officer Madej was looking for "marijuana in its raw form. Bud marijuana. Something that hasn't been smoked yet." He testified that, because the odor was "billowing out of" Vega's car, he was looking for more than the three marijuana buds and "shake weed" that he found in the center console.

{¶11} However, Officer Madej also testified that the envelopes "were not the source of the odor of marijuana." Additionally, the officer's testimony is inconsistent as to what he thought was in the envelopes. He testified as follows during the suppression hearing: he thought the envelopes contained "individually packaged drugs"; the envelopes "felt like it was individual bags and it wasn't consistent with stickers," and the packages showed no signs of containing "illicit materials."

{¶12} As to the hard candy found in the center console of Vega's car, Officer Madej testified he "didn't pay attention to it" when he first found it, that he didn't find anything "illicit" about it, and that it had no odor. Officer Madej did not mention the candy to any of the other officers he conferred with, nor did he mention the candy in Vega's traffic citations. In short, Officer Madej was not searching for candy.

Furthermore, his testimony supports the finding that Officer Madej had no reason to believe the large amount of raw marijuana he was searching for was contained in the two envelopes.

{¶13} This case is on point with *State v. Gonzales*, 6th Dist. Wood No. WD-07-060, 2009-Ohio-168, ¶ 17, which holds that "compartments and packages within a vehicle which could contain the illicit object for which the police have probable cause to believe exist may also be searched."

{¶14} In the case at hand, the police had probable cause to search Vega's vehicle when they found a small amount of loose marijuana and detected a strong odor of raw marijuana. Officer Madej did, in fact, conduct this search. However, he did not find any additional marijuana, and he could not get a K9 unit to the scene within a reasonable amount of time. Vega should have been released after his misdemeanor citations were issued and the search of the car revealed no further incriminating evidence. If, before the police completed this search, a K9 unit had alerted that the sealed envelopes may contain drugs, this may have constituted probable cause to open the envelopes. Furthermore, if Officer Madej had detected an odor of marijuana coming from the envelopes or testified that, in his training and experience, raw marijuana was typically packaged in envelopes of this type, these scenarios may have constituted probable cause as well.

{¶15} Police may conduct "a canine sniff of the vehicle during a traffic stop, so long as the duration of the traffic stop is not extended beyond what is reasonably

necessary to resolve the issue that led to the stop and issue a traffic citation." (Citations omitted.) *State v. Greene*, 2d Dist. Montgomery No. 25577, 2013-Ohio-4516, ¶ 22. Although this case is factually different than *Greene* in that a misdemeanor amount of marijuana was found in Vega's vehicle, the same rationale can be used to determine that the search of the envelopes violated Vega's Fourth Amendment rights. In other words, the police cannot extend the search of a vehicle — after the search revealed no further contraband — to wait for a K9 unit to arrive and sniff a sealed package.

{¶16} The trial court in the case at hand found that "without more, the smell of marijuana does not provide probable cause to open every container located during the search." Additionally, the court concluded that the "delay while waiting for an answer via either the 'sniff' of trained K-9 officer or legal guidance from superiors exceeded constitutionally permissible grounds to detain the defendant in this case." *See State v. Miller*, 10th Dist. Franklin Nos. 10AP-1017 and 10AP-1018, 2011-Ohio-3600, ¶ 30 ("a police officer may stop and detain someone for a minor misdemeanor offense, but the officer is not allowed to arrest that person and conduct a search incident to that arrest").

{¶17} In conclusion, the smell of marijuana amounts to probable cause to search a vehicle. However, this is limited to "every part of the vehicle and its contents that may conceal the object of the search." *U.S. v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The trial court in the case at hand, after evaluating the credibility of Officer Madej's testimony, concluded that the Officer was searching for raw marijuana and did not believe the envelopes contained this contraband. This factual conclusion is

supported by the evidence in the record. The court then concluded that an unreasonable amount of time passed while the police were looking for another basis for probable cause to open the envelopes. Accordingly, the court did not err in granting Vega's motion to suppress, the state of Ohio's sole assigned error is overruled, and the trial court's judgment is affirmed.

{¶18} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
MELODY J. STEWART, J., DISSENTS
(SEE ATTACHED DISSENTING OPINION)

MELODY J. STEWART, J., DISSENTING:

**{¶19}** The majority concludes both that the officer could not open packages that did not smell like marijuana and that the officer unreasonably detained Vega while waiting for a drug sniffing dog. Respectfully, these conclusions are legally unsupported.

**{¶20}** The search in this case was based on more than a mere suspicion of criminal activity — the trial judge acknowledged that the officer believed that small amount of marijuana he saw on initial observation was not enough to account for the very strong odor of marijuana "billowing" from Vega's vehicle. On that basis, the trial judge found that the officer was justified in conducting "a more thorough search." The trial judge did not characterize his ruling as "probable cause" to search Vega's vehicle, but that is the only reasonable conclusion from the court's findings. The majority concedes that the arresting officer had probable cause to search Vega's vehicle. *Ante*, at ¶ 14.

**{¶21}** In general, the Fourth Amendment to the United States Constitution does not require a warrant to search an automobile when the police have probable cause to believe it contains contraband or evidence of criminal activity. *Carroll v. United States*, 267 U.S. 132, 160-162, 45 S.Ct. 280, 69 L.Ed. 543 (1927). This exception to the warrant requirement exists because of the inherent mobility of automobiles and the reduced expectation of privacy that results from their pervasive regulation. *Id.* at 153 (explaining that the ability to move a vehicle quickly "out of the locality or jurisdiction in which the warrant must be sought" makes it "impracticable to secure a warrant."); *California v. Carney*, 471 U.S. 386, 390-391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) ("our later cases have made clear that ready mobility is not the only basis for the exception * * * [b]esides

the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.").

**{¶22}** "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). *See also California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained") and *Ross*, *supra* ("During virtually the entire history of our country — whether contraband was transported in a horse-drawn carriage, a 1921 roadster, or a modern automobile — it has been assumed that a lawful search of a vehicle would include a search of *any container that might conceal the object of the search*.") (Emphasis added.)

**{¶23}** Although the majority concludes that the arresting officer had probable cause to open and search all containers or packages in the vehicle, it finds that probable cause to open the sealed envelopes ceased because the arresting officer did not smell marijuana coming from inside the envelopes. It believes that the arresting officer's inability to smell marijuana coming from the envelopes means that he could not have logically believed that the mailing envelopes contained marijuana.

**{¶24}** This conclusion is contrary to United States Supreme Court precedent that "[w]hen there is probable cause to search for contraband in a car, it is reasonable for

police officers * * * to examine packages and containers *without a showing of individualized probable cause for each one*." (Emphasis added.) *Houghton*, 526 U.S. at 302. That the officer may not have detected an odor of marijuana coming from the envelopes did not vitiate probable cause because the lack of a marijuana odor did not mean that the envelopes did not contain drug contraband. *See, e.g.*, *State v. Dixon*, 2d Dist. Montgomery No. 22147, 2008-Ohio-1978, ¶ 9-11 (immaterial that police officer could not detect the smell of marijuana coming from a duffle bag in a car because having smelled marijuana emanating from the interior of the vehicle, "it was reasonable for the police officer to search the duffle bag sitting on the rear seat in plain view.").

{¶25} As this case shows, marijuana can be found in more than just its plant form, and those alternative forms may be less odoriferous. In addition, drug traffickers go the great lengths to abate the odor of marijuana, whether by packaging, *State v. Mowler*, 8th Dist. Cuyahoga No. 100019, 2014-Ohio-831, ¶ 31 (vacuum sealing), or using odors as a masking agent. *State v. McGee*, 2013-Ohio-4165, 996 N.E.2d 1048, ¶ 25 (7th Dist.) (cologne often used to mask the smell of marijuana); *State v. Fogel*, 5th Dist. Licking No. 11-CA-97, 2012-Ohio-1960, ¶ 23 (fabric softener used to mask the smell of large amounts of marijuana).

{¶26} Smell is not the sine qua non of a drug search supported by probable cause. For this reason, a drug detecting dog's failure to alert to the presence of drugs does not negate probable cause to search a vehicle. *See, e.g.*, *United States v. Williams*, 124 Fed.Appx. 885, 2005 U.S. App. LEXIS 4493, *5 (5th Cir.2005) (holding that, "under the

* * * circumstances, the failure of the drug dog to alert did not deprive the officers of probable cause to search the vehicle"); *United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir.2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all."); *United States v. Gill*, 280 F.3d 923, 926 and fn. 3 (9th Cir.2002) (denying defendant's suppression motion although a drug "dog did not alert").

{¶27} Dogs are far better at detecting odors than humans. If a trained drug sniffing dog's failure to alert to the presence of drugs does not destroy probable cause, a police officer's similar failure to alert to the same drugs cannot be the basis for finding that probable cause has been destroyed. This is especially so when drug traffickers actively try to mask the odor of marijuana. In other words, it would be perfectly logical that a package might not smell. This is not a case where the police were searching for a tuba by opening a sealed envelope.

{¶28} The second basis for the court's decision was that the 38-minute delay occasioned both by the officer's consultation on the scope of the vehicle search and obtaining the services of a drug sniffing dog was so unreasonable as to void the search.

{¶29} Because traffic stops are "especially fraught with danger to police officers," *Michigan v. Long*, 463 U.S. 1032, 1047, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), "an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez v. United States*, 575 U.S. 1, 135 S.Ct. 1609, 191 L.Ed.2d

492 (2015). An officer may take a reasonable amount of time between the initial traffic stop and deciding whether there is probable cause to search the stopped vehicle for contraband, provided that the delay is no longer than that "reasonably required to complete" the issuance of a traffic citation. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).

**{¶30}** When a police officer timely determines that there is probable cause to search a vehicle for contraband, "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure." *United States v. Johns*, 469 U.S. 478, 484,105 S.Ct. 881, 83 L.Ed.2d 890 (1985). While the police "may not indefinitely retain possession of a vehicle and its contents before they complete a vehicle search," requiring the police to conduct an immediate search of containers and packages discovered during a warrantless vehicle search

> would be of little benefit to the person whose property is searched, and where police officers are entitled to seize the container and continue to have probable cause to believe that it contains contraband, we do not think that delay in the execution of the warrantless search is necessarily unreasonable.

*Id.* at 487.

**{¶31}** In this case, the court focused on the length of time that elapsed while the police tried to obtain the services of a drug sniffing dog, but that fact was irrelevant. The officer had probable cause to search the vehicle, as the trial court found, after the traffic stop based on the strong odor of marijuana emanating from the car. And because there was probable cause to search, this finding permitted the officer to open the envelopes — containers that could reasonably contain the contraband — regardless of whether the

services of a drug-sniffing dog could be obtained.   The delay in obtaining the services of a drug-sniffing dog was immaterial and should not have been a factor in deciding the motion to suppress.   I therefore dissent.