[Cite as *State v. Alvaranga*, 2021-Ohio-1130.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 9-20-27

    v.

JAHMONI ALVARANGA,

                                   O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion Municipal Court
Trial Court No. TRC 20 937

Judgment Affirmed

Date of Decision: April 5, 2021

APPEARANCES:

    *Rocky Ratliff* for Appellant

    *Michael D. Swartz* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Jahmoni Alvaranga ("Alvaranga"), appeals the August 5, 2020 judgment of the Marion Municipal Court approving and adopting the magistrate's decision finding Alvaranga guilty after he tendered a no contest plea to one count of OVI, in violation of R.C. 4511.19(A)(1)(a). On appeal, Alvaranga assigns error to the trial court's decision overruling his motion to suppress.

*Relevant Facts and Procedural History*

{¶2} On February 11, 2020, Trooper Bice of the Ohio State Highway Patrol filed a complaint against Alvaranga alleging that he committed the offense of OVI, in violation of R.C. 4511.19(A)(1)(a). Upon arraignment, Alvaranga entered a plea of not guilty to the charge.

{¶3} On April 6, 2020, Alvaranga filed a motion to suppress evidence from being introduced by the State at trial based upon his contention that Trooper Bice's traffic stop of his vehicle was not supported by reasonable, articulable suspicion or probable cause.

{¶4} On June 18, 2020, the trial court conducted a hearing on Alvaranga's suppression motion. The parties stipulated at the hearing that the traffic stop of Alvaranga's vehicle occurred at 12:57p.m. in Marion County on February 9, 2020; that Trooper Bice was in uniform and driving a marked vehicle when he effectuated

-2-

the stop; and that Trooper Bice was sufficiently trained in the enforcement of Ohio's Uniform Traffic Laws.

{¶5} The State presented the testimony of Trooper Bice, who recalled receiving information from dispatch, on the date and time in question, advising him that a caller was on the line reporting a silver Nissan with North Carolina license plates driving recklessly on northbound U.S. 23. According to Trooper Bice, the caller was following the vehicle in question and relaying information while on the line with dispatch. The caller informed dispatch that the vehicle was not maintaining a constant speed and weaving within the lane of travel. The caller also gave an approximate location of the vehicle's location as it travelled on the highway. Trooper Bice stated that dispatch never disclosed to him the caller's identity or any other information about the caller.

{¶6} Trooper Bice testified that as he crossed a bridge over U.S. 23 and approached the on-ramp to the interstate he spotted Alvaranga's vehicle, which matched the description given by the caller. He estimated that four to five minutes passed between the time dispatch initially contacted him and when he located Alvaranga's vehicle. Approximately forty-five seconds after observing Alvaranga's vehicle, Trooper Bice approached the vehicle while it was traveling in the right lane of the two lanes of northbound travel. [1] Trooper Bice pulled his cruiser

---

[1] The record indicates that this particular part of U.S. 23 had two lanes of northbound travel and two lanes of southbound travel.

directly behind Alvaranga's vehicle and began to follow it at an estimated speed of 60 to 64 miles per hour. Trooper Bice recalled that the traffic was light and the stretch of highway was surrounded by farmland, with no houses located nearby. He explained that the caller was still on the line with dispatch at this time. Trooper Bice stated that even though he noticed the same driving behavior as the caller had described he did not observe any traffic or equipment violations while following Alvaranga's vehicle.

{¶7} However, after following Alvaranga's vehicle for an extended period of time Trooper Bice detected a strong odor of raw marijuana. Trooper Bice explained that Alvaranga's vehicle was the only vehicle in front of him when he first noticed the odor and that no other vehicles were in close proximity at the time. Trooper Bice testified that the smell lingered for a sustained period of time and did not dissipate when other cars eventually passed.[2] He further explained that he could detect the odor through the vents of his vehicle even though the windows were closed.

{¶8} Trooper Bice also observed that the passenger side window of Alvaranga's vehicle was opened approximately one-and-a-half to two inches. He explained that based on his training, he was aware that people who smoke marijuana

---

[2] Trooper Bice stated at the suppression hearing that the caller had also reported to dispatch that an odor of marijuana was emanating from the vehicle in question, but that information was not relayed to Trooper Bice until after he stopped Alvaranga's vehicle.

in vehicles open the windows in this manner to vent the car. Trooper Bice ascertained that the raw marijuana odor was emanating from Alvaranga's vehicle and effectuated a traffic stop. Specifically, Trooper Bice testified that he decided to stop Alvaranga's vehicle based upon the dispatch call and the odor of raw marijuana. However, he also testified that he would have conducted a stop of the vehicle based upon the raw marijuana odor alone.

{¶9} According to the impaired driver report, Trooper Bice observed Alvaranga to have red/bloodshot and glassy eyes. Alvaranga also unsuccessfully performed a series of roadside sobriety tests. Trooper Bice concluded that Alvaranga was impaired and arrested him for OVI. Upon arrest, Trooper Bice found marijuana on Alvaranga's person.

{¶10} On July 28, 2020, the trial court issued a judgment entry overruling the motion to suppress finding that Trooper Bice obtained the requisite reasonable, articulable suspicion to conclude that Alvaranga was driving while impaired based upon the call to dispatch, the smell of raw marijuana, and the totality of the circumstances. Accordingly, the trial court determined that Trooper Bice's decision to initiate the traffic stop was constitutionally valid.

{¶11} On August 5, 2020, the trial court issued a judgment entry journalizing Alvaranga's withdrawal of his previously tendered not guilty plea and his entry of a plea of no contest, with a stipulated finding of guilty to the OVI charge. The trial

court accepted Alvaranga's plea and sentenced him to 90 days in jail with 85 suspended, imposed a one-year suspension of his operator's license, placed him on two-years of reporting probation, and assessed a fine and costs.

{¶12} It is from this judgment entry that Alvaranga now appeals, asserting the following assignment of error.

> **THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE AS A RESULT OF AN ILLEGAL STOP.**

{¶13} In his sole assignment of error, Alvaranga argues that the trial court erred in finding that Trooper Bice had reasonable, articulable suspicion to conduct a traffic stop of his vehicle. Specifically, Alvaranga contends that the information relayed to dispatch from the anonymous caller was unreliable and therefore did not provide a sufficient basis to support the traffic stop. Alvaranga also challenges the credibility of Trooper Bice's testimony regarding his detection of raw marijuana odor emanating from Alvaranga's vehicle.

*Standard of Review*

{¶14} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "Consequently, an appellate court must accept the trial

court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

*Legal Authority*

{¶15} The investigatory stop of an automobile is a seizure for purposes of the Fourth Amendment and consequently must be based on a law enforcement officer's reasonable suspicion "that a motorist has committed, is committing, or is about to commit a crime." *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 24, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7. In justifying the stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968); *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988).

{¶16} Whether a police officer had "an objective and particularized suspicion that criminal activity was afoot must be based on the entire picture—a totality of the surrounding circumstances." *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991), citing *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690 (1981). "[The] circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Id.* at

87-88. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *Id.* at 88.

{¶17} Further, when a radio dispatch to law enforcement is based on information provided by an informant's tip, "the determination of reasonable suspicion will be limited to an examination of the weight of reliability due that tip. The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justifying the investigative stop." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299. Relevant factors in this determination include "the informant's veracity, reliability, and basis of knowledge." *Id.* In making this determination, courts consider whether the informant can be classified as an anonymous tipster, a known confidential informant, or an identified citizen informant. *Id.* at 300. As a general rule, "an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary * * *." *Id.*

{¶18} This is not to say that an anonymous informant is patently unreliable. Rather, the assessment of the reliability is again dependent upon the totality of the circumstances, not a single factor in the case. *See Navarette v. California*, 572 U.S. 393, 397, 134 S.Ct. 1683 (2014), quoting *Alabama v. White*, 496 U.S. 325, 327, 110 S.Ct. 2412 (1990) (stating that "under appropriate circumstances, an anonymous tip

can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.' ").

*Discussion*

{¶19} Contrary to Alvaranga's arguments on appeal, the record in the case *sub judice* demonstrates that the events leading up to Trooper Bice's traffic stop of Alvaranga's vehicle were not precipitated by a single anonymous tip. At the outset we note that although Trooper Bice testified that dispatch did not relay the identity of the caller to him there is nothing in the record to suggest that the caller's identity was never ascertained or that the caller remained anonymous. According to Trooper Bice's testimony the caller relayed their observations of Alvaranga's driving as they were following Alvaranga's vehicle on the highway. *See Weisner*, 87 Ohio St.3d at 302; *see also Navarette*, 572 U.S. at 399 (suggesting that "the caller reported the incident soon after she was run off the road. That sort of contemporaneous report has long been treated as especially reliable."). The record further indicates that the caller continued stay on the line with dispatch as Trooper Bice approached Alvaranga's vehicle on U.S. 23, confirming to dispatch that Trooper Bice had located the vehicle in question. *See Weisner*, 87 Ohio St.3d at 302; *Navarette*, 572 U.S. at 397. Moreover, there are no allegations that the caller was motivated by anything other than concern for the safety of the driver and others on the road. *See*

*Weisner* at 302. Therefore, this case involves more than just a conclusory tip of suspected criminal activity as Alvaranga contends.

{¶20} This notwithstanding, this Court does not need to consider whether the *call alone* was sufficient to provide Trooper Bice with reasonable suspicion to justify stopping Alvaranga's vehicle because Trooper Bice also observed Alvaranga's suspicious driving *and* detected an odor of raw marijuana emanating from Alvaranga's vehicle. Generally, " '[t]he odor of raw marijuana—especially an overwhelming odor of raw marijuana—creates probable cause to believe that a large quantity of raw marijuana will be found.' " *State v. Robinson*, 12th Dist. Madison No. CA2019-04-009, 2019-Ohio-5370, ¶ 23, quoting *State v. Gonzales*, 6th Dist. Wood No. WD-07-060, 2009-Ohio-168, ¶ 22; *see also State v. Moore*, 90 Ohio St.3d 47 (2000), paragraph one of the syllabus ("The smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search.").

{¶21} On appeal, Alvaranga does not challenge whether Trooper Bice is qualified to recognize the odor of raw marijuana. Rather, it appears that Alvaranga is challenging the trial court's determination that Trooper's Bice offered credible testimony regarding his detection of raw marijuana. However, at a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *See State v.*

*Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*. at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).

**{¶22}** On appeal, Alvaranga has failed to point to any portion of the record to demonstrate that the trial court erred in finding Trooper Bice credible. Throughout his testimony, Trooper Bice consistently stated when he detected the odor of raw marijuana and was explicit in the details of his determination that the odor was emanating from Alvaranga's vehicle. Specifically, Trooper Bice testified that he followed directly behind Alvaranga's vehicle for four to six miles when he detected an odor of raw marijuana. Trooper Bice recalled that Alvaranga's vehicle was the only vehicle in front of him when he first noticed the odor and that no other vehicles were in close proximity at the time, and that the smell did not dissipate when other cars passed. It was within the province of the trial court, as the finder of fact, to believe all or none of Trooper Bice's testimony in this regard. Moreover, with no evidence in the record to the contrary, we conclude the trial court's determination that Trooper Bice offered credible testimony is supported by competent, credible evidence in the record, and therefore we must accept the trial court's finding of fact.

{¶23} For the foregoing reasons, we conclude that under the totality of the circumstances there was sufficient evidence to cause a prudent person to believe that Alvaranga was driving while impaired. Therefore, the trial court did not err when it determined that Trooper Bice obtained reasonable, articulable suspicion to conduct a traffic stop of Alvaranga's vehicle.

{¶24} Accordingly, the assignment of error is overruled and the judgment and sentence of the Marion Municipal Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J., concurs in Judgment Only.**

**ZIMMERMAN, J., concurs.**

**/jlr**